GUERNSEY, J.
The Plaintiff has brought two actions against the Mohegan Tribal Gaming Authority, Docket Nos. GDTC-D-97-105 and GDTC-CV-97-106, arising out of the alleged termination of his employment by the Defendant. The Plaintiff alleges that he was hired as Director of Craps on or about April 15, 1996, and on August 16, 1996 received a “Personnel Action Form” resulting in his termination effective August 30,1996. The complaint in each case consists of an identical eight count complaint, with Docket No. GDTC-D-97-105 including the Discriminatory Employment Practices Claim form (G.D.R.-12 Rev. 4-97), and Docket No. GDTC-CV-97-106 including a civil summons form (G.D.R.-3 Rev. 9-96). On July 17, 1997 the court granted the Defendant’s Motion to Consolidate the two cases.
In each case, Plaintiff has alleged breach of express contract (Count One), breach of implied contract (Count Two), breach of implied covenant of good faith and fail* dealing (Count Three), negligent misrepresentation (Count Four), a violation of the Mohegan Tribal Gaming Authority Ordinance No. 97-5 (Count Five), breach of contract as third party beneficiary (Count Six), statutory discrimination (Count Seven), and promissory estoppel (Count Eight). The Defendants Mohegan Tribal Gaming Authority and Mohegan Tribal Gaming Enterprise have moved to dismiss Plaintiffs claims in their entirety, on grounds that Count Five, alleging employment discrimination, is the only count cog *389 nizable by this court, and that as to that count, the Plaintiff lacks standing and that his claim is untimely filed (this argument is advanced in Docket No. GDTC-D-97-105). As to all other counts, the Defendants argue that it enjoys sovereign immunity from unconsented suit (these claims are addressed in Docket No. GDTC-CV-97-106). Defendants’ Motion to Dismiss Plaintiffs claims will first be considered with respect to Count Five (brought pursuant to TGA 97-5) in connection with Docket No. GDTC-D-97-105.
A. Claims Under the Mohegan Tribal Gaming Authority Discriminatory Employment Practices Claims and Appeals Ordinance (TGA 97-5).
(1) Standing.
Article XIII of the Constitution of the Mohegan Tribe, Section I, grants to the [Mohegan] Tribal Gaming Authority “all governmental and proprietary powers of The Mohegan Tribe over the development, construction, operation, promotion, financing, regulation and licensing of gaming, and any associated hotel, associated resort or associated entertainment facilities, on tribal lands.” Mohegan Const., Art. XIII, Sec.l. Such powers must be within the scope of the authority delegated by the Tribal Council to the Tribal Gaming Authority pursuant to Ordinance No. 95-2 (enacted as 95-7-15-1). The Constitution further provides as that “the Tribal Gaming Authority shall have the power to grant a limited waiver of sovereign immunity as to the Gaming matters.” Mohegan Const., Art. XIII, Sec. 1.
Pursuant to this authority, effective March 11, 1997, The Mohegan Tribal Gaming Authority adopted Ordinance No. 97-5. This Ordinance contains a limited waiver of sovereign immunity “for the sole purpose of enabling an applicant for employment with the Gaming Enterprise or an employee or former employee of the Gaming Enterprise ... to file and process a claim or appeal in The Gaming Disputes Court in accordance with and subject to the specific provisions expressed in this Ordinance.” Sovereign immunity is not waived for any other purpose, including the filing of claims or suits for any other adverse employment action, “including, but not limited to, any charge, claim, or suit complaining of wrongful discharge.” TGA 97-5 § 11(a). As regards the portion of this action brought pursuant to TGA 97-5, the Defendant has raised two jurisdictional issues, to wit: that the Plaintiff lacks standing to file a claim or appeal, and that even if he had such standing, the claim was untimely filed.
The Mohegan Tribal Gaming Authority Discriminatory Employment Practices Claims and Appeals Ordinance is far from a general grant of authority for the bringing of actions for adverse employment decisions. Section XI specifically provides that all appeals and claims must be filed within the time limits provided, and any claim or appeal “which is not timely filed or fails to comply with the applicable provisions of this ordinance shall be dismissed.” TGA 97-5 § XI (a, b). The Discriminatory Employment Practices Ordinance further establishes two types of matters which may be brought to The Gaming Disputes Court, Claims and Appeals, and those qualified to file either one are strictly and narrowly defined. A claim may be filed only by two classifications of individuals:
Only individual applicants for employment who were denied or barred from employment ... and individuals employed or formerly employed by the Gaming Enterprise who have been suspended without pay or have had their employment terminated by the Gaming Enterprise prior to completion of their *390 respective probationary periods of employment ...
TGA 97-5 § III(a)l. The Ordinance further provides that the following classifications of individuals shall not have standing to file a claim pursuant to the Ordinance:
1. One who occupies or occupied a managerial position with The Gaming Enteiprise;
2. An applicant for a managerial position in The Gaming Enterprise;
3. An individual who has access to the grievance procedures set forth in The Gaming Enterprise Employment Policies or to the Board of Review.
TGA 97-5, Id.
The Defendants have challenged the standing of the Plaintiff to bring this claim, both on grounds that the Plaintiff does not fit into either of the two classifications of individuals eligible to file a claim, and that the Plaintiff occupied a managerial position and had access to appropriate grievance procedures, of which he did not avail himself.
As to the first issue, whether the Plaintiff was suspended or terminated prior to the completion of his probationary period of employment, the allegations of Plaintiffs complaint are silent. Although the Defendants point to the Assembly of Records, prepared in connection with this Claim, as containing evidence of Plaintiffs status at the time of his termination of employment, this does not conclusively establish Plaintiffs status for purposes of this motion. The affidavit in support Of Defendants’ Motion to Dismiss, filed by Kevin Bogle, Vice-President, Human Resources, is silent as to whether or not the Plaintiff was suspended or terminated pri- or to completion of his probationary period of employment, or whether the probationary period was extended. The Defendants further claim that the Plaintiff resigned from his position, pointing to a “Personnel Action Form” indicating that the Plaintiff resigned, which form is apparently signed by the Plaintiff.
In his brief, however, Plaintiff contends that he was fired, although Paragraph 20 of Count Five of his complaints could support either interpretation. As to Plaintiffs probationary status, the complaint is again silent, although the Discriminatory Employment Practices Claim (G.D.R.-12) filed by the Plaintiff claims the employment status of “FORMER EMPLOYEE Probationary Period Not Completed.” This claim form is an indispensable part of any claim pursuant to TGA 97-5. TGA 97-5 § 111(a)(3).
 In deciding jurisdictional issues raised by a pretrial Motion to Dismiss, the court must consider “the allegations of the complaint in their most favorable light.” Lemoine v. McCann, 40 ConmApp. 4(50, 464, 673 A.2d 115, quoting Reynolds v. Soffer, 183 Conn. 67, 68, 438 A.2d 1163 (1981). “A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts.” Carl J. Herzog Foundation, Inc. v. University of Bridgeport, 41 Conn. App. 790, 793, 677 A.2d 1378 (1996). It is clear that the probationary status of the Plaintiff as of the time of his termination is in dispute. Similarly, whether the Plaintiff in fact occupied a managerial position cannot be determined from the record. Although the title of “Director of Craps” connotes supervisory authority, this court is not in a position to say whether the same equates with a “managerial position”. (Cf. Connecticut General Statutes Section 5-270(g), defining “managerial employee”, for purposes of collective bargaining, in terms of responsibility for direction, development, implementation and evaluation of *391 goals and objectives, formulation of policy, etc.).
In this case, the court is unable to make the necessary factual findings on these two issues from the affidavits, which findings are necessary to determine the existence of standing under TGA 97-5. Similarly, the issue of whether the Plaintiff had access to the grievance procedures or the Board of Review are clearly in dispute. See Affidavit of Wendell Long, dated August 8, 1997. The Connecticut Supreme Court has held it to be error for a trial court not to allow an evidentiary hearing where questions of fact relating to standing were raised:
When issues of fact are necessary to the determination of a court’s jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses. The trial court erred in not holding such a hearing.
Unisys Carp. v. Department of Labor, 220 Conn. 689, 695-96, 600 A.2d 1019 (1991) quoting Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 56, 459 A.2d 503 (1983). The resolution of Defendants’ Motion to Dismiss Count Five of Plaintiffs Complaint does not require such a hearing, however, in light of the court’s ruling on the issue of Defendants’ claim that the complaint was untimely filed.
(2) Timeliness of Plaintiffs Action.
The Mohegan Tribal Gaming Authority Discriminatory Employment Practices Claims and Appeals Ordinance establishes strict time limits for the filing of claims thereunder:
A Claim may be filed directly with the Chief Clerk of the Court within thirty (80) days after the occurrence of the event of which such Claim arises, or within thirty (30) days after the Claimant first knew or, through the exercise of reasonable diligence should have known, of the occurrence of the event out of which such Claim arises. Any Claim filed more than thirty (30) days after the occurrence of the event out of which the Claim arises, or more than thirty (30) days after the Claimant first knew or, though the exercise of reasonable diligence should have known, of the occurrence of the event out of which such Claim arises, wall be deemed untimely and wall be subject to dismissal by the Court.
TGA 95-5, § 111(a)(2). The ordinance contains no provision allowing the court to vary the strict time limits set forth therein.
As already noted, the Plaintiff alleges that he was hired as Director of Craps on or about April 15,1996. Paragraphs 24, 25, 26, 27, 28, 29, 30, and 31 allege conduct by the Defendants or by Plaintiffs supervisor indicative of a discriminatory employment practice that took place “throughout the Plaintiffs employment with Mohegan Sun”, and which “created a hostile working environment for the Plaintiff in that it intentionally engaged in behavior to disrupt the Plaintiffs work, to make the Plaintiff feel uncomfortable, and to try to cause him to perform his job duties badly.” Plaintiffs Complaint, Count Five, Paragraph 31. These allegations, taken as a whole, clearly indicate that the conduct complained of was known to the Plaintiff, or discoverable in the exercise of reasonable diligence, at the time it took place. The Plaintiff has made no claim that he could not have reasonably known of the alleged behavior until a later date. On August 16, 1996, Plaintiff received a “Personnel Action Form” resulting in his termination effective August 30, 1996. The Affidavit of Kevin Bogle indicates that one Jeff Avena was appointed to the position formerly held by the Plaintiff on Septem *392 ber 9, 1996. Plaintiffs claim was not filed until May 9, 1997, well beyond the thirty day period allowed for the filing of claims.
However, as Plaintiff points out, the present version of TGA 97-5 was not adopted until April 10, 1997. If this were the effective date of the Ordinance, Plaintiffs Complaint would be timely filed. However, in its original form, TGA 97-5 was adopted on March 11, 1997. Although one of the changes brought about by the April 10, 1997 amendment was the addition of a definition of “file” in Section I(j), it is indisputable that Plaintiffs cause of action existed at the time of the original enactment of the Ordinance on March 11, 1997. The definition of “file” as added to Section I(j) closely follows the strict requirements that had already been set forth in Section 111(a)(3). Similarly, the “Savings Clause” contained in Section XII clearly applies to a claim “pending at the time of the adoption of this ordinance”, and is inapplicable to the instant ease.
In his Supplemental Memorandum, Plaintiff attacks Defendants’ contention that this court lacks jurisdiction because the action was not brought within the time limits contained in TGA 97-5. Although Plaintiff is correct in asserting that in most cases the defense of statute of limitations is properly raised by a special defense, Connecticut Practice Book Section 164, where “a specific time limitation is contained within a statute that creates a right of action that did not exist at common law, then the remedy exists only during the prescribed period and not thereafter.” Ecker v. West Hartford, 205 Conn. 219, 232, 530 A.2d 1056 (1987). At issue is whether a time limitation contained within a statute is procedural, and thus subject to waiver, or is “rather is a limitation on the liability itself, and not of the remedy alone.” Ecker v. West Hartford, supra at 232, 530 A.2d 1056.
This particular issue has been extensively analyzed by the Mashantucket Pequot Tribal Court in Jenkins v. Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 9, 1 Mash. 7 (1993) where the court, per Freeman, C.J., held that the time limitation contained in the Sovereign Immunity Waiver Ordinance, M.P.T.O. 100192-01, See. 11, is jurisdictional rather than procedural in nature. The holding in Jenkins followed the decision of the Connecticut Supreme Court in Ecker v. West Hartford, mpm, that the time limitations contained in Connecticut General Statutes Section 52-555 (allowing actions for wrongful death) were a jurisdictional prei*equisite that could not be waived, as well as the holdings of similar cases involving limited waivers of sovereign immunity as to the United States under the Federal Tort Claims Act, 28 USC Section 2671 et seq., and as to the State of Connecticut under Connecticut General Statutes Section 13a-144. These limitations were found to be jurisdictional and non-waivable.
In the instant case, TGA 97-5 leaves no doubt that the time limitations contained therein are jurisdictional and non-waivable:
Section XI—Limitation on Presentation of Claim or Appeal
(a) All Appeals and Claims shall be filed within the time limits provided herein and in accordance with the applicable provisions of this ordinance.
(b) Any Claim or Appeal which is not timely filed or fails to comply with the applicable provisions of this ordinance shall be dismissed.
TGA 97-5, § XI. Nevertheless, the Plaintiff has argued that the thirty day statute of limitations contained in TGA 97-5 is void by operation of Section 702 of Ordinance 95-4, which establishes a general one year statute of limitations for actions *393 against the Mohegan Tribe or Tribal Gaming Authority. M.T.O. 96-4, Art. VII, Sec. 702(1). While the language of Section 702 provides that the one year statute shall apply “unless otherwise specifically provided in this ordinance”, there is no authority for holding that such a provision preempts the authority of the Mohegan Tribe or the Tribal Gaming Authority, as set forth in the Mohegan Constitution, to grant limited waivers of immunity at any time in the future under whatever limitations deemed appropriate. No authority has been cited that even suggests that this court should read into an ordinance any such limitation on the constitutional power of the Tribe or the Tribal Gaming Authority. “Later enactments are presumed to repeal [or be inapplicable to] earlier inconsistent ones to the extent of the conflict ...” Plowed,e v. Liburdi, 207 Conn. 412, 417, 540 A.2d 1064 (1988), quoting Keogh v. Bridgeport,, 187 Conn. 53, 65, 444 A.2d 225 (1982). A legislative body, in the enactment of statutes, “is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces.” Plourde v. Li-burdi, 207 Conn. At 417, quoting State v. Staub, 61 Conn. 553, 556, 23 A. 924 (1892). Clearly, the Mohegan Tribe and the Tribal Gaming Authority have the power by later enactment to modify the general statute of limitations contained in M.T.O. 95-4.
The court is aware that holding compliance with the thirty day statute of limitations to be a jurisdictional prerequisite, when viewed in the circumstances of this case, may seem unduly harsh, especially where the period of time by which the Plaintiffs claim did not comply with the strict time limits of TGA 97-5 is relatively short. Nevertheless, this court is bound by the strict, limited waiver of immunity contained in TGA 97-5 and is without authority to permit a deviation from the strict time limitations which are incorporated into the waiver of immunity.
B. Claims Based on Breach of Express Contract, Implied Contract, Implied Covenant of Good Faith and Fair Dealing, and Promissory Estoppel.
Count One of Plaintiffs Complaint alleges breach of express contract in that Mohegan Sun breached the written provisions of its Handbook and Manual by discharging the Plaintiff “without giving him the required warnings mandated by its own Manual and Handbook”, “by discharging the Plaintiff in violation of the policies and procedures [relating to hiring practices/Indian Preferences] mandated by its own Manual and Handbook” and by failing to treat the Plaintiff fairly. Plaintiffs Complaint, Count One, Paragraph 23. As a result of the alleged conduct, the Plaintiff claims severe emotional distress, loss of income, benefits, and other consequential damages, including but not limited to the loss of a promotion. It is further alleged that Mohegan Sun’s conduct was willful, wanton, and malicious, for which Plaintiff seeks punitive damages. Count Two makes the same allegations, adding that Mohegan Sun and the Plaintiff “impliedly agreed to be bound by the terms of the Handbook and Manual during the course of their employment relationship.” Plaintiffs Complaint, Count Two, Paragraph 12. Count Three of Plaintiffs Complaint restates the allegations of Count One, adding thereto an allegation that the conduct breached the “covenant of good faith and fair dealing implied in all contracts” and “violated an important public policy of the State of Connecticut.” Plaintiffs Complaint, Count Three, Paragraphs 24-25, Count Eight alleges that the Defendants promised to treat the Plaintiff fairly, equitably and justly, that he relied on these *394 promises, and that he has been injured by their breach.
The Defendants have moved to dismiss on grounds that these counts (as well as others) are barred by the doctrine of sovereign immunity. As regards his contractual, quasi-contractual and promissory es-toppel elaims, Plaintiff contends that the sovereign immunity of the Tribe may be waived by contract, and at the time the Plaintiff entered into its contract of employment with the Defendant, Article XIII, Section I of the Mohegan Constitution caused him to believe that the Tribe had waived its sovereign immunity.
Absent “a clear waiver [of immunity] by the tribe or congressional abrogation”, Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991), it is clear that Indian tribes possess the “common law immunity from suit traditionally enjoyed by sovereign powers.” Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). The sovereignty of the Mohegan Tribe of Indians of Connecticut is further expressly set forth in the Mohegan Constitution, which provides that the Tribe shall have all the inherent sovereign rights and powers of an independent, indigenous sovereign nation. Mohegan Const., Art. II. While Indian Tribes can waive their sovereign immunity, “such waiver may not be implied, but must be expressed unequivocally.” McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989). “The issue of tribal sovereign immunity is jurisdictional in nature.” McClendon v. United, States, Id.
Section 502 of Mohegan Tribal Ordinance 95-4, which established the Gaming Disputes Court, specifies that nothing in the ordinance establishing the Gaming Disputes Court “shall be construed as a waiver of the sovereign immunity of the Tribe, the Authority or the Tribe’s other enterprises or political sub-divisions, or its officers, agents, or employees, unless specifically denominated as such.” M.T.O. 95-4, Art. V, Sec. 502. In support of his claim that, as to his contract of employment, the Defendant waived sovereign immunity, Plaintiff points to Article XIII, Section 1 of the Mohegan Constitution, dealing with the Tribal Gaming Authority, which provides in relevant part as follows:
The Tribal Gaming Authority shall have the power to grant a limited waiver of sovereign immunity as to Gaming matters, to contracts relating to Gaming. ... Nothing contained in this section shall limit the power of the Tribal Council to waive the sovereign immunity of The Mohegan Tribe as to Gaming or other matters, or with respect to other tribal revenues or assets. The Tribal Gaming Authority shall have the power to enter into contractual relationships which bind The Mohegan Tribe, provided that such contracts shall be within the scope of authority delegated by the Tribal Council to the Tribal Gaming Authority.. Contracts of the Tribal Gaming Authority shall be the law of The Mohegan Tribe and shall be specifically enforceable in accordance with their terms.
Mohegan Const., Art. XIII, Sec. 1. At issue is whether the language quoted from Article XIII, Section I of the Constitution providing that contracts of the Tribal Gaming Authority “shall be specifically enforceable in accordance with their terms” constitutes the “clear waiver” of sovereign immunity, that “cannot be implied but must be unequivocally expressed.” Cherokee Nation of Oklahoma v. Babbitt, 117 F.3d 1489, 1498 (D.C.Cir.1997).
In interpreting the meaning of this constitutional provision, this court must recognize the “well established prin- *395 eiple that statutes in derogation of sovereign immunity should be strictly construed.” White v. Burns, 213 Conn. 307, 312, 567 A.2d 1195 (1990). “Where there is any doubt about [the] meaning or intent [of the statute in derogation of sovereign immunity, it is] given the effect which makes the least rather than the most change in sovereign immunity.” Federal Deposit Insurance Corp. v. Peabody, N.E., Inc., 239 Conn. 93, 102, 680 A.2d 1321, quoting White v. Bums, 213 Conn. 307, 312, 567 A.2d 1195 (1990). The Connecticut Supreme Court has held “the state’s sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the legislature is disclosed, by use of express terms ..White v. Burns, 213 Conn. 307, 312, 567 A.2d 1195 (1990), quoting Murphy v. Ives, 151 Conn. 259, 262-63, 196 A.2d 596 (1963).
The Plaintiffs construction of Article XIII, Section 1 of the Mohegan Constitution would interpret the phrase 1 ) “shall be specifically enforceable in accor-dance with their terms” to waive the Tribe’s and the Tribal Gaming Authority’s sovereign immunity for every contract, whether dealing with employment or oth-erwise. As set forth above, such a broad waiver of sovereign immunity must be ex-pressly stated, and cannot be implied. If Plaintiffs contention that Article XIII, Sec. 1 automatically inserts into every contract a waiver of sovereign immunity is correct, then the power expressly granted to the Tribal Gaming Authority to “grant a limited waiver of sovereign immunity ... to contracts relating to Gaming” is super-fluous. “It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions.” Misstate v. Szymkiewicz, 237 Conn. 613, 621, 678 A.2d 473 (1996) quoting Turner v. Turner, 219 Conn. 703, 713, 595 A.2d 297 (1991). Rather, “statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant.” State v. Szymkiewicz, at 621 quoting Hopkins v. Pac, 180 Conn. 474, 476, 429 A.2d 952 (1980). The intent of the legislature is to be found “not in an isolated phrase or sentence, but rather, from the statutory scheme as a whole.” Figueroa v. C & S Ball Bearing, 237 Conn. 1, 6, 675 A.2d 845 (1996), quoting State v. Breton, 235 Conn. 206, 226, 663 A.2d 1026 (1995).
Taking Article XIII, Section 1 as a whole, the most logical construction, and the one requiring the “least change” in sovereign immunity, is that the Tribal Gaming Authority may, in its contracts, grant a limited waiver of sovereign immunity and may enter into contractual relationships which bind The Mohegan Tribe. These contracts are enforceable “in accordance with their terms,” but any waiver of sovereign immunity must be an express term of the contract to be enforced.
The Plaintiff has not alleged, nor is the court aware of, any waiver of sovereign immunity contained in Plaintiffs contract, even if the same were interpreted to include the Mohegan Sun Employee Handbook and/or the Mohegan Sun Resort Policy and Procedure Manual. Therefore, Counts One, Two, Three, and Eight must be dismissed on grounds of sovereign immunity.
C. Claims Based on the Alleged Violation of C.G.S. § 46a-60(a)(l)
Count Seven of Plaintiffs Complaint re-alleges the allegations of Count Five, but claims the actions of the Defendants constitute a violation of Conn, Gen.Stat. § 46a-60(a)(l) by discriminating against the Plaintiff, a Native American, on grounds of “race, color, creed, ... national
|⅞⅞|11|11⅝ *396 origin, ancestry.... ” Plaintiffs Complaint, Count Seven, Paragraph 33.
In the absence of a clear, unequivocal waiver of immunity by the Tribe or congressional abrogation, the statutory claims asserted by Plaintiff are barred by the Defendants’ sovereign immunity, as discussed above. Oklahoma Tax Commission v. Citizen Band Potawatomi India;n Tribe of Oklahoma, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). The Plaintiff has failed to show any such waiver or abrogation. Although Plaintiffs Supplemental Memorandum argues that jurisdiction may exist pursuant to Title VII 42 U.S.C. Section 2000e, for purposes of that title the term “employer” specifically excludes “an Indian Tribe”. 42 U.S.C. Section 2000e(b).
D. Claims for Negligent Misrepresentation.
Count Four of Plaintiffs Complaint, while re-alleging most of Count One, adds that the Defendants represented to the Plaintiff that the terms and conditions of his employment would be those set forth in the Manual and Handbook, Plaintiffs Complaint, Count Four, Paragraph 24, and that the statements concerning the terms and conditions of employment contained in the Handbook were false. Id, at Paragraph 25. This conduct is alleged to constitute a negligent misrepresentation as to the terms and conditions under which the Plaintiff would be employed, upon which he relied. Connecticut “has long recognized liability for negligent misrepresentation. [The Connecticut Supreme Court has] held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth.” Williams Ford, Inc. v. Hartford Coora.nt Company, 232 Conn. 559, 575, 657 A,2d 212 (1995), quoting .Richard v. A Waldman & Sons, Inc., 155 Conn. 343, 346, 232 A.2d 307 (1967). The tort of negligent misrepresentation has been held applicable to actions involving termination of employment. D’Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 218-19, 520 A.2d 217 (1987). See Klatte v. G. Michael Broom, CKO, Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 387, 2 Mash. 16 (1996).
Ordinance No. 96-2, “An Ordinance Establishing the Mohegans Torts Code”, adopted May 1, 1996, contains a limited waiver of sovereign immunity for “injuries proximately caused by the negligent acts or omissions of the Mohegan Tribal Gaming Authority.” M.T.O. 96-2, Sec. 3(b)(1). An injury is defined as “death, harm to a person, or damage to or loss of property which, inflicted by a person under Connecticut state law or Tribal law, would constitute a tort and which is expressly covered by the liability insurance of the Gaming Enterprise Site without regard to any deductible amount contained in the insurance policy.” The harm allegedly suffered by the Plaintiff, at least in terms of “severe emotional distress”, suffered as a result of the alleged negligent misrepresentation, would qualify as an injury under M.T.O. 96-2, Sec.2(I). The issue of coverage by the liability insurance of the Gaming Enterprise Site has not been raised by either party and is not before the court at this time.
The Mohegan Torts Ordinance, M.T.O. No. 96-2, contains a time limit of 180 days after the claim accrues (defined as the date on which the injury is sustained) within which: (a) to file a notice with the Gaming Disputes Court; and (b) to file a claim, defined as a petition for an award under the ordinance. M.T.O. 96-2, Sec. 9 and 10. Plaintiff alleges that he was terminated as of August 30, 1996. The record reflects that the instant action was filed with the *397 Gaming Disputes Trial Court on May 16, 1997. There is no evidence that the notice required by M.T.O. 96-2, Sec. 9 was filed at any time. In their Motion to Dismiss, the Defendants have claimed that the 180 day time limitation is jurisdictional in nature, and for that reason this action must be dismissed. The Plaintiff claims that the statute of limitations argument is not properly before the court at this time.
For the reasons set forth in the discussions concerning the thirty day statute of limitations contained in TGA 97-5, the conclusion is inescapable that the time limitation in M.T.O. 96-2 is a limitation on the liability itself, and not on the remedy alone. Ecker v. West Hartford, 205 Conn. 219, 232, 530 A.2d 1056 (1987); Jenkins v. Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 9, 1 Mash. 7 (1993). It is therefore apparent on the record that, irrespective of whether notice was properly given, this claim was not presented within 180 days of the date on which the claim accrued, and for that reason must be dismissed.
D. Claims for Breach of Contract as Third Party Beneficiary.
Count Six of Plaintiffs Complaint, in addition to restating Paragraphs 1 through 22 of Count One, alleges that the Indian Gaming Regulatory Act, Public Law in 93-638, the Gaming Compact between the State of Connecticut and the Mohegan Tribe of Indians, and the contract between the Mohegan Tribe of Indians and Trading-Cove Associates all require the Defendants) to adhere to Indian preferences in making employment decisions. Plaintiff characterizes the two federal statutes, the Gaming Compact and the Trading Cove Associates Agreement all as agreements of which the Plaintiff claims to be a third party beneficiary. Plaintiffs Complaint, Count Six, Paragraphs 23-29. Plaintiffs Complaint is devoid of reference to the portion of the Indian Gaming Regulatory Act or Public Law 93-638 (Indian Self-Determination) which forms the basis of a contract or agreement of which the Plaintiff could conceivably be a third party beneficiary.
The basis of Plaintiffs standing as a third party beneficiary is unclear. Inasmuch as there is no tribal law on the issue of status as a third party beneficiary, pursuant to M.T.O. 95-4, Ait. Ill, Sec. 301, this court will turn to Connecticut law in analyzing Plaintiffs status. While traditionally the courts of the State of Connecticut have referred to the intent of the parties “to create a direct obligation between the promisor and the beneficiary as the test for determining whether a nonparty to the contract is a third party beneficiary thereof’, in 1997 the Connecticut Appellate Court, reviewing Stowe v. Smith, 184 Conn. 194, 441 A.2d 81 (1981), concluded that a mutual intent on the part of promisor and promisee “is no longer necessary for a beneficiary to have a right to enforce the contract.” Grigerik v. Sharpe, 45 ConmApp. 775, 783-787, 699 A.2d 189 A.2d. 189 (1997) cert, granted. 243 Conn. 918 (1997). The Appellate Court concluded, in accordance with the views of certain commentators, that it is the intent of the promisee that should determine whether a third party has the status of third party beneficiary. Grigerik v. Sharpe, 45 Conn. App. at 789, 699 A.2d 189. As to the two federal statutes cited by Plaintiff, no argument has been advanced as to how the Plaintiff would qualify as a third party beneficiary thereunder.
Similarly, with respect to the claim under the Gaming Compact with the State of Connecticut, the court is unaware of any provision therein which conceivably could form the basis for the claimed status of third party beneficiary. As to the agree *398 ment between The Mohegan Tribe of Indians and Trading Cove Associates, Section 7.13 thereof specifically provides that, with certain exceptions not here relevant, “this agreement is exclusively for the benefit of the parties hereto and it may not be enforced by any other party other than the parties to this agreement and notwithstanding the provisions of Section 7.11, shall not give rise to liability to any third party other than the authorized successors and assigns of the parties hereto.”
Even if Plaintiff were able to claim the status of third party beneficiary, or to construe Count Six as asserting a cause of action under the Indian Gaming Regulatory Act and Indian Self-Determination Act, there has been no waiver of the Defendants’ sovereign immunity that would permit the assertion of such claims. The Defendants enjoy the common law immunity enjoyed by sovereign powers in the absence of a clear waiver of sovereign immunity by the Tribe or by Congressional abrogation. Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991).
E. Claims Under the Indian Civil Rights Act, 25 U.S.C. § 1302(8)
Both of Plaintiffs complaints are devoid of any reference whatsoever to the Indian Civil Rights Act (ICRA), 25 U.S.C. § 1302 et seq. It is only in his Memorandum in Opposition to Defendants’ Motion to dismiss that Plaintiff advances, without elaboration, a claim that the various statutes of limitation deny Plaintiff due process and equal protection of the laws as required by 25 U.S.C. § 1302(8). The Defendants’ Consolidated Supplemental Memorandum approaches this claim in terms of an equal protection analysis of the time limitations contained in TGA 97-5 and M.T.O. 96-2, and whether the Defendant had a property interest in his employment. Neither Plaintiff nor Defendants, however, have briefed the threshold issue of whether tribal sovereign immunity bars an action under the Indian Civil Rights Act brought to the Gaming Disputes Court. The Indian Civil Rights Act has been held to have two distinct and competing purposes: the strengthening of the position of the individual tribal member vis-a-vis the tribe, as well as the furthering of Indian self-government. Santa Clara Pueblo v. Martinez, 436 U.S. at 62, 98 S.Ct. 1670, 56 L.Ed.2d 106. Section 1302 has been held selectively to incorporate, and in some instances modify, the safeguards of the Bill of Rights to fit the unique needs of tribal governments. The provision cited by Plaintiff, Section 1302(8) “differs from the constitutional equal protection clause in that it guarantees ‘the equal protection of its [the Tribes] laws’ rather than of ‘the laws.’ ” Santa Clara Pueblo v. Martinez, 436 U.S. at 62 fn. 14, 98 S.Ct. 1670, 56 L.Ed.2d 106. The United States Supreme Court has stated that creation of a federal cause of action for the enforcement of rights created in Title I of the Indian Civil Rights Act “plainly would be at odds with the congressional goal of protecting tribal self-government.” Santa Clara Pueblo v. Martinez, 436 U.S. at 64, 98 S.Ct. 1670, 56 L.Ed.2d 106. In Santa Clara Pueblo, the Supreme Court refused to approve “a judicially sanctioned intrusion into tribal sovereignty ... to fulfill the purposes of ICRA.” Santa Clara Pueblo v. Martinez, 436 U.S. at 61, 98 S.Ct. 1670. The court went on to state:
Tribal forums are available to vindicate rights created by the ICRA, and Section 1302 has the substantial and intended effect of changing the law which these forums are obligated to apply. Tribal courts have repeatedly been recognized as appropriate forums for exclu *399 sive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians.
Santa Clam Pueblo v. Martinez, 436 U.S. at 65, 98 S.Ct. 1670.
The Mohegan Constitution specifically provides that nothing contained therein, nor any other provision of tribal law, shall foreclose or limit the right that “any person may otherwise have to bring an action in a court of competent jurisdiction to protect a right or seek a remedy otherwise available pursuant to the Indian Civil Rights Act, 25, U.S.C. § 1301 et seq.” Mohegan Constitution, Art. XIII, Sec. 4.
Despite the additional claims made in Plaintiffs Memorandum and Sup-plemental Memorandum, it is clear that Plaintiffs complaints were not brought pursuant to, and do not even purport to state a cause of action under the Indian Civil Rights Act. In deciding a motion to dismiss, this court is bound by the complaint, and must examine its allegations in their most favorable light to determine whether sufficient facts have been alleged to overcome the sovereign immunity of the Defendants:
“[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss.” Amove v. Fmnkel, 228 Conn. 358, 364, 636 A.2d 786 (1994). “When a [trial] court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light.” Reynolds v. Sof-fer, 183 Conn. 67, 68, 438 A.2d 1163 (1981). Because this case comes to us on a threshold sovereign immunity issue, pursuant to a motion to dismiss; Practice Book 143; we do not pass on whether the complaint was legally sufficient to state a cause of action. Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). In the posture of this case, we examine the pleadings to decide if the plaintiff has alleged sufficient facts: (1) with respect to sovereign immunity, to support a conclusion that the defendant acted in excess of his statutory authority; and (2) with respect to personal immunity under 4-165, to support a conclusion that the defendant was acting outside the scope of his employment or wilfully or maliciously. Id., 542, 590 A.2d 914; see Barde v. Board of Trustees, 207 Conn. 59, 64, 539 A.2d 1000 (1988).
Antinerella v. Rioux, 229 Conn. 479, 489, 642 A.2d 699 (1994).
In the instant case, Plaintiffs claims are brought on theories of express contract, implied contract, implied covenant of good faith and fair dealing, tort, discriminatory employment practices, third party beneficiary, state employment discrimination, and promissory estoppel. These counts are devoid of factual allegations that would show that the actions of the Defendants deprived the Plaintiff of the equal protection of the Tribe’s laws or deprived him of property without due process of law.
Therefore, the allegations of Plaintiffs complaints are insufficient to give this court jurisdiction pursuant to the Indian Civil Rights Act. As previously described, the Mohegan Constitution is quite specific that neither the Constitution nor tribal law shall foreclose or limit the right to seek a remedy under 25 U.S.C. § 1301 et seq. The issue of whether sovereign immunity is a bar to an action brought to this court thereunder, and wRether this court has jurisdiction to hear such claims, must be decided in a case brought pursuant to the Indian Civil Rights Act.
Accordingly, Defendants’ motion to dismiss is hereby granted.