EAGAN, Judge.
BACKGROUND
The plaintiffs brought the present action alleging that the defendants failed to give *328 a preference-to the plaintiff, First American Mechanical, Inc., as a Native American contractor, owned by a member of the Mohegan Tribe of Indians of Connecticut, in the awarding of a ten year maintenance contract for the Mohegan Sun facility. This action was brought originally to this court without first resorting to the administrative process.
LEGAL STANDARD OF REVIEW
“A Motion to Dismiss admits all well-pleaded facts (except those contradicted by evidence introduced outside the record), and the complaint should be construed most favorably to the plaintiff.” Creasey v. MTGA, GDTC-CV-03-119-PMG, 4 Am. Tribal Law 570, 570-71, 2003 WL 25795204, *1 (2003); citing Duguay v. Hopkins, 191 Conn. 222, 227, 464 A.2d 45, 49 (1983).
It has been held by this court that the Mohegan Tribe and its sub-entities are entitled to the well-established “immunity from suit traditionally enjoyed by sovereign power’s.” Creasy, supra at 4 Am. Tribal Law at 572-73, 2003 WL 25795204, *2, citing Ager v. Office of the Director of Regulation, 1 G.D.R. 1 (1997), quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). “The issue of tribal immunity is jurisdictional in nature,” Ager, 1 G.D.R. at 2; McClendon v. United States, 885 F.2d 627, 629 (9th Cir.1989). Any waiver of this sovereign immunity by the Tribe must be unequivocally expressed and cannot be implied. Long v. Mohegan Tribal Gaming Authority, et al, 1 G.D.R. 5, 10, (1997); Cherokee Nation of Oklahoma v. Babbitt, 117 F.3d 1489, 1498 (D.C.Cir.1997).
“[T]he doctrine of tribal immunity extends to individual tribal officials acting in their representative capacity and within the scope of their authority.” Creasy, supra at 4 Am. Tribal Law at 572-73, 2003 WL 25795204, *2, citing Romanella v. Hayward, 933 F.Supp. 163, 167 (D.Conn.1996); Kizis v. Morse Diesel International, Inc., et al, 260 Conn. 46, 53-54, 794 A.2d 498 (2002).

COUNT ONE—MOHEGAN TRIBAL EMPLOYMENT RIGHTS ORDINANCE (TERO)

Count One of the plaintiffs’ First Amended Complaint, filed October 22, 2003, alleges that the defendants have violated plaintiffs’ rights under the Mohegan Tribal Employment Rights Ordinance (“TERO”). At the time of the filing of the amended complaint, the applicable ordinance was MTO 2002-02, which subsequently was repealed by MTO No. 2004-01, effective January 14, 2004. Because review of the ordinance does not reveal any retroactive provision, the court reviews the plaintiffs’ claims pursuant to MTO 2002-02. Section XIX of M.T.O. 2002-02 provides:
“Except as expressly provided herein, nothing in this Ordinance is to be construed as a waiver of the Tribe’s sovereign immunity from uncontested lawsuit, nor as consent by the Tribe to bring an action against the Tribe, its officers, its representatives, or any of its departments or entities.” [1]
Defendants argue that neither Section XIX nor any other ordinance waives the Tribe’s sovereign immunity for claims such as the plaintiffs assert under the TERO in Count One of their First Amended Complaint. Although plaintiffs dispute this conclusion, their arguments to the contrary overlook the fact that “[a]ny waiver of sovereign immunity must be nar *329 rowly construed”, Struckman v. Burns, 205 Conn. 542, 558, 534 A.2d 888 (1987), and that “... any waiver of sovereign immunity is inextricably linked to the exhaustion of administrative remedies, ...” Owner-Operators Independent Drivers Association of America v. Connecticut, 209 Conn. 679, 684, 553 A.2d 1104 (1989); Doe v. Heintz, 204 Conn. 17, 35-36, 526 A.2d 1318 (1987) (Because plaintiffs had not exhausted the administrative remedies, the state’s defense of sovereign immunity defeated plaintiffs’ constitutional claims).
In the present case, the TERO incorporates specific sections dealing with administrative remedies and the exhaustion of them. Section XII of M.T.O., 2002-02, provides for a “Complaint and Hearing Procedure” pursuant to which the Mohegan Tribal Employment Rights Commission is to investigate and conduct hearings on complaints involving compliance with the TERO. Section XIV (A) states that “.... any person who is aggrieved by a decision or order issued by the Commission may appeal to the Tribal Court ...[2] while Section XIV (B) mandates that prior to seeking any relief from the Tribal Court, an aggrieved person shall “... first seek administrative relief pursuant to procedures prescribed and set forth in Section XII of this Ordinance.”.
The doctrine of exhaustion of administrative remedies has been expressly recognized by the Mohegan Gaming Disputes Court, Jones v. Mohegan Tribal Gaming Authority, 1 G.D.R. 15, 17, 1 Am. Tribal Law 400, 1998 WL 35281215 (1998); Pirolli v. Mohegan Tribal Gaming Authority, 1 G.D.R. 25, 1 Am. Tribal Law 41.1, 1998 WL 35281216 (1998); see generally Lang v. Mohegan Tribal Gaming Authority, supra, and in Connecticut jurisprudence which has been adopted as Mohegan tribal law. Accordingly, plaintiffs’ various arguments seeking to establish a waiver of sovereign immunity necessarily must fail unless they have exhausted their administrative remedies under Section XIV (B) of MTO 2002-02. Heintz, supra.
Plaintiffs fail to allege that any relief was sought before the Mohegan Tribal Rights Commission. Instead, plaintiffs allege that “Plaintiff .... was informed that a complaint to the TERO Commission pursuant to Section XII would be worthless and a total ‘waste of time’ ”. First Amended Complaint, Para. 46. Based on this allegation, plaintiffs argue that the pursuit of administrative remedies would have been futile and, therefore, they are excused from the doctrine of exhaustion of administrative remedies.
There are recognized exceptions to the doctrine of exhaustion, such as when recourse to the administrative remedy would be futile. Kosinski v. Lawlor, 177 Conn. 420, 424-25, 418 A.2d 66 (1979). These exceptions, however, have all been construed narrowly. Fish Unlimited v. Northeast Utilities Service Co., 254 Conn. 1, 13, 756 A.2d 262 (2000).
The plaintiffs’ allegation here that it was told a complaint with the Commission would be a waste of time does not meet the standard for futility. Housing Authority v. Papandrea, 222 Conn. 414, 430, 610 A.2d 637 (1992) (The fact that the commissioner of housing had, in an advisory letter, already taken a position that was adverse to plaintiff did not excuse compliance with administrative remedies based on futility); Concerned Citizens of Sterling v. Sterling, 204 Conn. 551, 559, 529 A.2d 666 (1987) (“[W]e have never held that the mere pos *330 sibility that an administrative agency may deny a party the specific relief requested is a ground for an exception to the exhaustion requirement.”)
The court need not decide whether there has been a waiver of sovereign immunity in the instant case because no waiver could be effective absent plaintiffs’ compliance with the administrative remedies of the TERO. Accordingly, Count One must be dismissed for failure to exhaust administrative remedies.

COUNT TWO—CONNECTICUT UNFAIR TRADE PRACTICES ACT

Count Two of the plaintiffs’ First Amended Complaint claims that the defendants violated the Connecticut Unfair Trade Practices Act, C.G.S. Section 42-llOg et seq. (CUTPA). In sum, the plaintiffs allege that they have suffered an ascertainable loss, and that the defendants “jointly and severally have engaged in unfair and deceptive methods of competition by denying plaintiff a light to competitive bidding.” First Amended Complaint, Paragraph 60.
The court has not found, nor have the plaintiffs provided any authority for, plaintiffs’ position that the defendants’ sovereign immunity is waived to allow a CUTPA claim to proceed. Since this is a statutory remedy and not a common law tort, there would need to be a specific waiver of sovereign immunity as to CUTPA in order for this court to have jurisdiction. It has been previously held in the case of Bassett v. Mashantucket, Pequot Museum. and Research Center, Inc., 221 F.Supp.2d 271 (D.Conn.2002) that representatives of the neighboring Mashantucket Tribe are not liable under CUTPA under the doctrine of sovereign immunity. The same principles apply to the present case. Count Two must be dismissed for lack of subject matter jurisdiction since there has been no waiver of sovereign immunity. Bassett, supra.

COUNT THREE-IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Count Three alleges a violation of an Implied Covenant of Good Faith and Fair Dealing. An express contract can contain an express waiver of tribal sovereign immunity. See Mohegan Tribal Gaming Authority v. Kohn Pedersen Fox Associates, P.C., et al., (Docket No: X04-CV-03-0127351 J.D. Norwich, Memorandum of Decision, December 23, 2003, Quinn, J.). However, in a subsequent decision, the Mohegan Gaming Disputes Trial Court dismissed a claim based on implied contract, on the grounds that there can be no waiver of sovereign immunity in an implied contract by its very terms. World Extreme Cage Fighting, LLC v. Mohegan Tribal Gaming Authority, GDTC-CV-03-133-TBW, 5 Am. Tribal Law 279, 2004 WL 5660584 (2004) (Wilson, J.).
Any wraiver of its sovereign immunity by the Tribe must be unequivocally expressed and cannot be implied. Long v. Mohegan Tribal Gaming Authority, et al., 1 G.D.R. 5, 10, 1 Am. Tribal Law 385, 1997 WL 34678573 (1997); Cherokee Nation of Oklahoma v. Babbitt, 117 F.3d 1489, 1498 (D.C.Cir.1997). Furthermore the plaintiffs cannot rely on the limited waiver of sovereign immunity contained in the Mohegan Torts Code 2001-07. The definition of tort contained therein expressly excludes a breach of a duty imposed by contract. MTO 2001-07 Section 5(20). Accordingly, Count Three of the First Amended Complaint must be dismissed due to a lack of *331 subject matter jurisdiction since there has been no waiver of sovereign immunity.

COUNTS FOUR AND FIVE—INDIAN CIVIL RIGHTS ACT (ICRA) DENIAL OF DUE PROCESS AND EQUAL PROTECTION

In Counts Four and Five, respectively, plaintiffs allege a denial of due process and equal protection of law under the Indian Civil Rights Act(ICRA), 25 U.S.C. Sec. 1302(8), which prorides:
“No Indian tribe in exercising powers of self-government shall: (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.”
Defendants argue that nowhere in the plaintiffs’ First Amended Complaint are there allegations that they have either a liberty or property interest affected by the claimed failure to comply with TERO requirements. Accordingly, since a liberty or property interest is a necessary element of due process and equal protection claims, Counts Four and Five must be dismissed. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
Although the plaintiffs do not specifically identify a liberty or property interest that has been affected by the claimed disregard of TERO requirements, it is clear that the gravamen of the entire First Amended Complaint is that the plaintiff contractor should have had the opportunity to bid on the maintenance contract. Indeed, plaintiffs acknowledge that “Overall the complaint was brought under Mohegan Tribal Ordinance (MTO) 2002-02( hereinafter ‘TERO’)”. Plaintiffs’ Memorandum of Law in Opposition to Defendants’ Motion to Dismiss, p. 1.
In the light of this position, and construing the allegations most favorably to plaintiffs as is mandated on a Motion to Dismiss, it would appear the plaintiffs are claiming that the TERO bestowed on them a vested right to be included in the challenged bidding process. Assuming, without accepting, that this allegation pleads a liberty and property interest sufficient to implicate the due process and equal protection clause of ICRA, plaintiffs confront the same failure to exhaust administrative remedies problem that they did in pursuing Count One.
Elevating any rights the plaintiffs might have under the TERO to a due process and equal protection level in Counts Four and Five does not excuse compliance with the administrative remedy scheme set forth in the TERO. Connecticut jurisprudence, which has been adopted as Mohegan tribal law, has long recognized that direct adjudication even of constitutional claims is not warranted when the relief sought by the litigant might conceivably have been obtained through an established administrative procedure. Sullivan v. State, 189 Conn. 550, 559, 457 A.2d 304 (1983); Doe v. Heintz, supra, 204 Conn. at 34, 526 A.2d 1318 (“Claims of constitutional violations are no exception to this general rule[of exhaustion]”); Barde v. Board of Trustees, 207 Conn. 59, 66, 539 A.2d 1000 (1988)(“[B]ecause exhaustion of such an alternative means of relief is a prerequisite to our jurisdiction to consider [the] constitutional claim ... we conclude that the trial court lacked jurisdiction ... ”)
The defendants also maintain that the ICRA contains no abrogation of Indian tribal sovereignty so as to permit the recovery of monetary damages. We need not decide whether there has been an abrogation of sovereign immunity in the instant case because no waiver could be effective without the prior exhaustion of administrative remedies.
*332 Accordingly, Counts Four and Five must be dismissed for the same reason as Count One.

COUNT SIX—INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

Count Six alleges a claim for Intentional Interference with Contractual Relations. The elements of a claim for tortious interference generally are:
“... the existence of a contractual or beneficial relationship and that the defendants), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss,,, [F]or a plaintiff successfully to prosecute such an action it must prove that the defendant’s conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously.” (Citations omitted; internal quotation marks omitted.) Solomon v. Aberman, 196 Conn. 359, 364-65, 493 A.2d 193 (1985).
A review of the First Amended Complaint raises serious questions whether it adequately pleads a claim for tortious interference with contractual relations.
Even if well-pled, the plaintiffs have provided no authority to establish waiver of sovereign immunity allowing for the recovery of damages for such a tort. Accordingly, Count Six must be dismissed on the grounds of sovereign immunity.

COUNT SEVEN—INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count Seven, the plaintiff David Bartha alleges that the individual defendants, William J. Velardo, Ihor Koba-sa, Frank Chapman and Gary Finnegan, are liable for an intentional infliction of emotional distress. The plaintiff alleges that the defendants engaged in conduct that was extreme, outrageous and illegal. Amended Complaint, Paragraph 89. In paragraph 18 of the First Amended Complaint, the plaintiffs allege that plaintiff, First American Mechanical, Inc., is an employee as defined in MTO 2001-07 and that plaintiff, David Bartha, is an agent of that employed entity.
The issue of the jurisdiction of the court in this instance has previously been decided in the case of Collins v. Mohegan Tribal Gaming Authority, 1 G.D.R. 108, 108-109 (2003). In Collins, supra, an intentional infliction of emotional distress count was dismissed based on sovereign immunity, with a citation to The Mohegan Torts Code, Ordinance Number 2001-07, Section 4E, which states:
“This Code shall not apply to any claims by employees of MTGA arising from or out of their employment by the MTGA or from or out of their supervision by MTGA executives, managers, or supervisors. All rights, claims, and remedies of employees of the MTGA are codified elsewhere, and this Code contains no waiver of sovereign immunity by either the Mohegan Tribe or MTGA so as to permit claims arising from any aspect from the employment relationship between the MTGA and its employees, nor does this Code constitute a consent by the Mohegan Tribe or the MTGA to be sued by any MTGA Employee.”
This court notes that a prior case decided under the now repealed Torts Code MTO 98-1 had allowed a claim of infliction of emotional distress to proceed because the action was alleged to be outside of the scope of employment. Worthen v. Mohegan Tribal Gaming Authority, 1 G.D.R. 64, 67-68, 2 Am Tribal Law 410, 2000 WL *333 35733918 (2000). Section 6 of the prior ordinance, in relevant part, provided: “This ordinance does not immunize employees of the Mohegan Tribal Gaming Authority from individual liability for the full measure of the recovery applicable to a claimant if it is established that their conduct exceeded the scope of their employment or authority.”
However, the current Torts Ordinance MTO 2001-07 is the relevant ordinance. It deleted the express reference to conduct exceeding the scope of employment. Accordingly, this court follows the holding in Collins v. Mohegan Tribal Gaming Authority, supra. Count Seven must be dismissed. There has been no waiver of sovereign immunity from the intentional infliction of emotional distress by employees.
CONCLUSION
Based upon the authority above, the court grants the Defendants’ Motion to Dismiss Plaintiffs’ First Amended Complaint.

. This is the identical language contained in MTO 2004-01.

. Section XIV (A) in MTO 2004-01 continues to provide for appeals to the Tribal Court, but is more expansive.