WILSON, Judge.
This is an action brought in three counts seeking to recover monetary damages for alleged (1) negligent infliction of emotional distress; (2) discrimination because of physical disability; and (3) violation of the Indian Civil Rights Act, 25 U.S.C. Sec. 1302(8). The defendant has moved to dismiss all three counts. For the reasons which follow, the defendant’s motion to dismiss must be granted.
I.
In his first count the plaintiff alleges that he was a full time employee of the defendant who was terminated for violation of the defendant’s attendance policy. He claims that the attendance policy was negligently misapplied by his supervisor with the knowledge of the defendant. He also claims that the defendant knew that the plaintiff had been diagnosed with cancer and that the termination created an *414 unreasonable risk of causing emotional distress which might result in illness or bodily harm. Plaintiff seeks monetary damages for lost wages, insurance premiums, medical bills and expenses of relocation. The plaintiff did not cite any particular Mohegan ordinance or other law as a basis for this count.
The defendant moved to dismiss this count on the ground that the defendant’s Discriminatory Employment Practices Ordinance (M.T.O. 98-2) is the plaintiffs exclusive remedy; that under that ordinance the plaintiffs claim is time barred; and that tribal sovereign immunity bars all other employment-based claims.
The plaintiff counters with the argument that this count was grounded not on the Discriminatory Employment Practices Ordinance but, rather, for personal injury under the Mohegan Torts Code (M.T.O. 98-1) and that under that code this claim is not time barred.
The defendant Mohegan Tribal Gaming Authority (MTGA) is an entity created by the Mohegan Tribe of Indians of Connecticut (hereafter Tribe) pursuant to Mohegan Tribal Ordinance (hereinafter M.T.O.) No. 95-2 (enacted as 95-7/15-1) to operate the Mohegan gaming enterprises. The Mohegan tribe is a federally recognized Indian tribe. See Constitution of the Mohegan Tribe of Indians of Connecticut, Preamble. As such it has sovereign immunity. As a matter of federal law the Tribe is subject to suit only where congress has authorized the suit or the Tribe has waived its immunity. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981 (1998).
No congressional act authorizes the claim alleged in the first or second counts; therefore, the issue is whether the Tribe has waived its immunity from suit in this case. The two possible bases for waiver applicable in this case are the Mohegan Torts Code, M.T.O. 98-1, and the Discriminatory Employment Practices Ordinance. M.T.O. 98-2, each of which establishes limited waivers for cases falling within their terms.
M.T.O. 98-1, Sec. 3, provides a limited waiver of sovereign immunity and allows suit or certain claims for injury. “Claim” and “Injury” are defined as follows:
SECTION 2.
(e) “Claim” means a petition for an award under this ordinance. A claim may be filed with respect to any injury as defined in this ordinance and which is expressly covered by the liability insurance of the Gaming Enterprise Site without regard to any deductible amount contained in the insurance policy.
(i) “Injury” means death, harm to a person, or damage to or toss of property which, if inflicted by a person under Connecticut state law or tribal law, would constitute a tort and which is expressly covered by the liability insurance of the Gaming Enterprise Site without regard to any deductible amount contained in the insurance policy.
M.T.O. 98-2 provides for a limited waiver of sovereign immunity to allow certain “appeals” and “claims” to be brought by employees who claim certain “discriminatory employment practices.” Those terms are defined as follows:
Section I Definitions
(a) “Appeal” shall mean an appeal, set forth in writing on a form provided by the Chief Clerk of the Court and duly filed by the claimant with the Court in accordance with the applicable provisions of this ordinance, (1) from a Final Decision of the General Manager affirming or overturning, in whole or in part, a decision of the Board of Review that the individual filing the Appeal was or was *415 not the object of a discriminatory employment practice by the Gaming Enterprise, as herein defined, or (2) from a decision by the Trial Court, rendered pursuant to this ordinance, by which the claimant or General Manager is aggrieved.
(e) “Claim” shall mean a written complaint, set forth on a form provided by the Chief Clerk of the Court and filed by the Claimant directly with the Court pursuant to the applicable provisions of this ordinance, alleging that the Claimant has been the object of a discriminatory employment practice.
(i) “Discriminatory Employment Practice” means: a refusal by the Gaming Enterprise to hire or employ any individual, or a decision to bar, suspend or discharge from employment any individual because of such individual’s race, color, religious creed, age, sex, physical handicap, national origin or ancestry, or because the individual, after becoming employed by the Gaming Enterprise, filed a claim for workers’ compensation benefits or otherwise exercised such rights afforded to him pursuant to the provisions of the Connecticut Workers’ Compensation Act, C.G.S. § 31-275, et. seq.; provided that, it shall not be a discriminatory employment practice when the practice: (a) constitutes a legitimate implementation by the Gaming Enterprise of a bona fide occupational qualification or need; (b) was the result of a legitimate, nondiscriminatory business decision; (c) implements the provisions of the Management Agreement requiring preference in recruiting, training and employment to members of the Mohegan Nation, their spouses and children and to enrolled members of other federally recognized Indian Tribes; or (d) would have occurred notwithstanding any discriminatory employment practice.
The limited waiver was granted in the following terms:
Section II—-Waiver of Sovereign Immunity (a) The Mohegan Tribal Gaming Authority hereby grants a limited waiver of its sovereign immunity for the sole purpose of enabling an applicant for employment with the Gaming Enterprise or an employee or former employee of the Gaming Enterprise, who believes that he or she is or has been the object of a Discriminatory Employment Practice by the Gaming Enterprise, as defined in Section 1, part (i) of this ordinance, to file and process a Claim or an Appeal in the Gaming Disputes Court in accordance with and subject to the specific provisions expressed in this ordinance. The Mohegan Tribal Gaming Authority does not waive its sovereign immunity from claims, appeals, suits, complaints, or charges by any person based on any theory of liability for damages resulting from breach of express or implied, contract, or quas i-contract or from, negligent or intentional tortious conduct, arising in, from, or out of the person’s employment, or the application of or termination of employment. The named defendant in any Claim or Appeal filed under this ordinance shall be the Mohegan Tribal Gaming Authority, and no other person or entity, (emphasis added) Subsection (d) provides: “This waiver of
sovereign immunity shall be strictly construed.”
Reading Count I most favorably to the plaintiff, the gravamen of his complaint is that he was terminated from employment because of a physical handicap, i.e., cancer and that he suffered emotional distress. It therefore seems to fall within the definition of “Discriminatory Employment Practice” and, as will be discussed, it would be time-barred under M.T.O. 98-2. To the extent that it is not within said definition, *416 it falls within the nonwaiver language of Sec. 11(a) in italics and is therefore also barred. The plaintiff seeks to avoid this by claiming that it is a tort claim under M.T.O. 98-1, i.e., he suffered “harm” which constitutes an “injury”.
In support of his argument, the plaintiff cites the dictum in Long v. Mohegan Tribal Gaming Authority, 1 G.D.R. 5, 11, 1 Am. Tribal Law 385, 1997 WL 34678573 (1997). There, the plaintiff alleged a tort of negligent misrepresentation involving termination of employment. The court opined that “the harm allegedly suffered by the plaintiff, at least in terms of ‘severe emotional distress’ suffered as a result of the alleged negligent misrepresentation, would qualify as an injury under M.T.O. 96-2, Sec. 2(i)(Now M.T.O. 98-1) It was dictum[1] because the actual holding of the court was that the plaintiffs action, no matter how the term “injury” might be construed, was in any event time barred and the matter was dismissed because the claim was not timely presented, a jurisdictional prerequisite.
Here, although the plaintiffs claim was not presented within the time limits of the Discriminatory Employment Practices Claims and Appeals Ordinance (M.T.O. 98-2), it was timely presented under the Tort Code (M.T.O. 98-1) and, hence, the issue presented is whether the plaintiffs claim under the first count falls within the waiver of sovereign immunity under the Torts Code.
“There is a presumption that the legislature in enacting a law does so with regal'd to existing relevant statutes so as to make one consistent body of law.... If two statutes appear to be repugnant, they are to be construed, if reasonably possible, so that both are operative.” State v. Mwr-tha, 179 Conn. 463, 466, 427 A.2d 807 (1980). (citations omitted) “To accomplish this, we must give effect to the expressed intention of the legislature, which is determined by the words employed to make that intention manifest.” Cicala v. Administrator, 161 Conn. 362, 365, 288 A.2d 66 (1971). In Connecticut jurisprudence, the supreme court will not impute to the legislature an intent to pass antagonistic legislation. In re Juvenile Appeal (85-BC), 195 Conn. 344, 366 n. 18, 488 A.2d 790, 802 n. 18 (1985). See generally, 2A Sutherland, Statutory Construction, Sec. 51.02 (4th Ed.1984).[2]
It is also a well settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. Oles v. Furlong, 134 Conn. 334, 342, 57 A.2d 405 (1948); Institute of Living v. Hartford,, 133 Conn. 258, 270, 50 A.2d 822 (1946). See also, 2A Sutherland, Statutory Construction, Sec. 51.02, N. 3: “To the extent that a conflict exists, the latter more specific statute controls ove]' the former more general one;” and N. 7: “... to the extent that statutes are inconsistent, the later statute which deals with the same subject matter in a particular way, will prevail over an earlier statute of a more general nature, and the later statute will be regarded as an exception to or qualification of the earlier general statute.” (citations omitted)
*417 Finally, statutes in derogation of sovereign immunity should be strictly construed. The sovereign right not to be sued without consent is not to be diminished unless a clear intention to that effect on the part of the legislative body is disclosed by the use of express terms. See, White v. Hums, 213 Conn. 307, 312-313, 567 A.2d 1195 (1990). See generally, 3 Sutherland, Statutory Construction, Sec. 62.01 (4th Ed. 1974).
Applying these principles of statutory construction to the ordinances before the court, it appears reasonably possible to construe the ordinances in such a manner that both are operative. First, it is clear that both ordinances grant only limited waivers of the defendant’s acknowledged sovereign immunity from suit. If there is any doubt about their meaning and intent, when read together they are to be given the effect which makes the least rather than the most change in sovereign immunity. White v. Bums, supra, at 312, 567 A.2d 1195.
Reading the definition of “injury” in the Torts Code, M.T.O. 98-1 Sec. 2(i), to mean injury other than the type of injury encompassed under the Discriminatory Employment Practices Claims and Appeals Ordinance No. 98-2, Sec. 11(a), gives reasonable effect to both ordinances. That is to say, the latter ordinance expressly does not waive any claims for, inter alia, tor-tious conduct arising in, from or out of a person’s termination of employment. It is therefore necessary to conclude that it was not the intention of the Mohegan Tribal Council that such a claim would be included within the broad definition of “injury” contained in the Mohegan Torts Code. This court will not impute to the Tribal Council an intent to pass antagonistic legislation.
Further, the specific terms of M.T.O. 98-2 expressly barring such claims prevails over the general definition of “injury” contained in M.T.O. 98-1.
Finally, although not necessary for this conclusion, it is noted that M.T.O. 98-2 was originally adopted on March 11, 1997 as M.T.O. 97-5; whereas, M.T.O. 98-1 was originally enacted May 1, 1996 as M.T.O. 96-2. In accordance -with the principles cited, the latter more specific ordinance prevails over the former general ordinance.
II.
The second count expressly alleges that the plaintiff was terminated as a result of his disability and that such was a violation of the defendant’s policy and laws; hence, it expressly falls within the purview of M.T.O. 98-2. Further facts from the record in this case are necessary to discuss this claim.
The plaintiff was hired by the defendant on October 8, 1996 as a probationary employee. He completed a ninety day probationary period and became a regular full-time employee. On December 8, 1997 his employment was terminated. As a regular employee he had access to a five step review or process to seek a reversal of the termination: the immediate supervisor; the department manager; the employee relations department and/or a vice president; a board of review; and an appeal within five (5) days to the general manager. The general manager is authorized to reverse a termination, and the general manager’s decision is final and subject to appeal to this court.
The plaintiff initiated the review process and went as far as Step 4, the board of review, which on December 19, 1997 upheld the termination. The plaintiff did not appeal to the general manager. He filed his notiee of claim and complaint in this *418 case on May 26, 1998. Sec. 111(a) of, M.T.O. 98-2 provides as follows:
Section III Claims and Appeals
(a) Standing to File Claims and Appeals
(1) Only individual applicants for employment who were denied or barred from employment by the Gaming Enterprise and individuals employed or formerly employed by the Gaming Enterprise who have been suspended without pay or have had their employment terminated by the Gaming Enterprise prior to completion of their respective probationary periods of employment with the Gaming Enterprise, shall have standing to file Claims pursuant to this ordinance, provided that no employee or former employee who occupies or occupied a managerial position with the Gaming Enterprise, no applicant for a managerial position in the Gaming Enterprise, and no individual who has access to the grievance procedures set forth in the Gaming Enterprise Employment Policies or to the Board of Review shall have standing to file a Claim pursuant to this ordinance.
(2) The General Manager or Claimant aggrieved by a decision of the Trial Court, or employees or former employees against whom a Final Decision has been rendered by the General Manager shall have standing to file Appeals pursuant to this ordinance, provided that the General Manager or Claimant shall have standing to file an Appeal only from an adverse ruling of the Tribal Court issued pursuant to the provisions of this ordinance. No Appeal will lie from a Final Decision unless the Appellant has exhausted all applicable administrative remedies, including, but not limited to, the grievance and Board of Review process set forth in the Gaming Enterprise Employment Policies. No Appeal filed by an individual which otherwise complies with the provisions of this ordinance shall fail because the General Manager has failed to comply with the requirements of this ordinance without proper cause. The Court will decide in favor of the Appellant (default judgment) if the General Manager fails to comply. The Final Decision of the General Manager shall include notice to the Appellant of the right to Appeal within thirty (30) days after notice of the Final Decision is given.
Because the plaintiff was a regular employee who had access to the foregoing grievance process, he is not entitled to file a “claim” in this court. An appeal to this court lies only from a final decision of the general manager after the plaintiff has exhausted all applicable administrative remedies. This is a jurisdictional requirement. The failure to exhaust the administrative remedies deprives this court of jurisdiction to act on his complaint. Jones v. MTGA, 1 G.D.R. 15, 17, 1 Am. Tribal Law 400, 1998 WL 35281215 (1998).
III.
In the third count the plaintiff alleges that in terminating the plaintiff for allegedly violating the attendance policy, the defendant misapplied its attendance policy and denied the plaintiff due process of law as set forth in 25 U.S.C. Sec. 1302(8) of the Indian Civil Rights Act (ICRA). That act provides in pertinent part as follows:
Sec. 1302 Constitutional Rights No Indian Tribe in exercising powers of self-government shall—... (8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law.
The plaintiff does not claim a denial of equal protection, and the Civil Rights Act applies to “any person”, Indian or non- *419 Indian. Canby, American Indian Law 252 (2d Ed.1988). The plaintiff did not elaborate as to how his due process rights were ⅞;-violated. The defendant asserts that the plaintiffs claim in this regard is barred because of (1) sovereign immunity; (2) that the plaintiff has not asserted a “liberty or property” interest protected by the due process clause of the ICRA; and (3) the plaintiff failed to exhaust his due process remedies. The court finds that the third ground is dispositive.
In support of its first argument that a suit under the ICRA is barred by sovereign immunity, the defendant relies heavily on Santa Clara Pueblo v. Martinez, 436 r.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). In that case the supreme court did hold that suits in the federal court against a tribe under the ICRA are barred by its sovereign immunity from suit. But it did not hold that such suits may not be maintained in a tribal court. To the contrary, the court said:
Tribal forums are available to vindicate rights created by the ICRA, and Sec. 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply. Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians. 436 U.S. at 65-66, 98 S.Ct. at 1680-81.
Because the plaintiff instituted this action in a tribal court, the bar to suit announced by the supreme court in Santa Clam Pueblo is not applicable. The plaintiff can commence and prosecute an action in this court “to vindicate rights created by the ICRA.” Ibid. The issue then becomes what rights created by the ICRA does the plaintiff seek to vindicate. It is the right not to be deprived of liberty or property (without due process of law.
This leads to an analysis of the defendant’s second argument as to the ICRA count that that count is legally deficient as it fails to state a claim cognizable under the ICRA. It is true that “the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment’s [here, the ICRA’s] protection of liberty and property. When protected interests are implicated, the right to some kind of a hearing is paramount. But the range of interests protected by procedural due process is not infinite.” Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569-570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548(1972).
The defendant’s argument in this regard is that the plaintiff has failed to allege sufficient facts that a protected interest was involved. Specifically, the defendant points out that the plaintiffs liberty was not affected and, as an at-will employee, the plaintiff did not have a property interest affected.
But these perceived shortcomings (although potentially grounds for a motion to strike) do not deprive this court of jurisdiction over the subject matter. As noted, the Santa Clara Pueblo case holds that tribal courts do have jurisdiction over suits to vindicate ICRA rights. In passing on a motion to dismiss, this court must consider the allegations of the complaint in their most favorable light. Long v. Mohegan Tribal Gaming Authority, 1 G.D.R. 5, 7, 1 Am. Tribal Law 385, 1997 WL 34678573(1997); Jones v.MTGA, 1 G.D.R. 15, 1 Am. Tribal Law 400, 1998 WL 35281215 (1998).
Therefore, we reach the defendant’s third argument in support of its motion to dismiss the IGRA, count, viz., the failure to exhaust his remedies and failure to timely appeal to this court.
*420 It is found as a fact that the plaintiff was a regular full time employee who had completed his probationary period. He therefore was not entitled to file a “claim” with this court (M.T.O. 98-2 Sec. 1(e) and Sec. 111(a)(1)) but, rather, was entitled under the Mohegan Sun Employee Handbook to a five step administrative review of his termination. The plaintiff went as far as the fourth step to the board of review. He had a right to appeal the adverse decision of the board of review, within five (5) days, to the general manager and, under M.T.O. 98-2, to appeal to this court, within thirty days, from a final decision of the general manager. M.T.O. 98-2 Sec. 1(a); Sec. 11(a); Sec. 111(b)(2). The plaintiff did not appeal to the general manager; therefore, he did not exhaust his administrative remedies as required by Sec. 111(a)(2). The existence of this procedure satisfies the procedural due process rights afforded by the ICRA inasmuch as there is a provision for “some kind of a hearing.” Board of Regents v. Roth. The plaintiff did not avail himself of this procedure. The failure to exhaust administrative remedies as expressly required by M.T.O. 98-2 deprives this court of jurisdiction. Janes v. Mohegan Tribal Gaming Authority, 1 G.D.R. 15, 17, 1 Am. Tribal Law 400,1998 WL 35281215 (1998).
As noted, the plaintiff, as a non-probationary employee, was not entitled to file a “claim” in this court as distinguished from an “appeal” from a final decision of the general manager. Even if, however, he were entitled to file a “claim,” such claim would have had to have been filed “within thirty (30) days after the occurrence of the event out of which such claim arises....” M.T.O. 98-2 Sec. 111(b)(1).
The plaintiffs termination occurred on December 8, 1997 and the plaintiffs notice of claim and complaint were filed in this court on May 26, 1998, more than five (5) months after the occurrence. Such failure “will be deemed untimely and will be subject to dismissal by the court.” M.T.O. 98-2 Sec. 111(b)(1). These limitations are jurisdictional and non-waivable. Long v. MTGA, 1 G.D.R. 5, 8, 1 Am. Tribal Law 385, 1997 WL 34678573 (1997).
IV.
For the foregoing reasons the defendant’s motion to dismiss is granted. The action is dismissed.

. Dictum does not have the force of precedent. Sharkiewicz v. Smith, 142 Conn. 410, 412, 114 A.2d 691 (1955).

. "As a general rule, courts apply the same rules of construction to municipal ordinances as they do to statutes.” IA Sutherland, Statutory Construction, Sec. 30.06 (4th Ed. 1972). This court will apply the same rules to the Mohegan Tribal Ordinances (M.T.O).