FACTS

I. STATEMENT OF THE CASE
The plaintiff, Darius Bethel, appeals from the judgment rendered following the trial court’s granting of the defendants’ motion to dismiss as to all twelve counts of his complaint. The Bethel claims were brought against the defendants, Mohegan Tribal Gaming Authority (MTGA), Mohegan Tribal Gaming Enterprise (MTGE), Mohegan Tribal Nation a/k/a the Mohegan Tribe of Indians of Connecticut (MTN), James K. Keane and Raul Ruiz. The claims of the plaintiff against all defendants include intentional tort claims for assault (Count 1), battery (Count 2), false imprisonment (Count 3), intentional infliction of emotional distress (Count 4), trespass to chattels (Count 5), conversion (Count 6), defamation (Count 10), and abuse of process (Count 12). The plaintiff further asserted claims against the defendants for negligent supervision (Count 7). Finally, Bethel charged the defendants with claims alleging violation of his statutory lights: wrongful discharge in violation of his lights under1 the Indian Civil Rights Act (ICRA) (Count 8); violation of his rights pursuant to 42 U.S.C. § 1983 (Count 9); and violation of his rights pursuant to 42 U.S.C. § 1981 (Count 11).
The trial court was confronted with parties that characterized their claims and defenses in distinctly different manners. The plaintiff Bethel asserted his rights were based upon a variety of tort or statutory bases. The defendants argued that since all of the conduct described in the plaintiffs complaint arose out of an employment relationship, that the court should treat the claims as being asserted under the Discriminatory Employment Practices Act M.T.O. 98-2.
The trial court first examined the issue of sovereign immunity raised by the defendants. It held that the waiver' of sovereign immunity contained in M.T.O. 98-1, Sec. 3, “is limited to the negligent acts or omissions of the MTGA; there is no waiver in the Torts Code to permit the assertion of intentional tort claims.” (Record pp. 163-164). The trial court then determined that the negligence claims asserted by the *376 plaintiff were in the nature of “discriminatory employment practices” as defined by M.T.O. 98-2. The plaintiffs claims under that ordinance were barred because they had not been asserted in a timely manner or, alternatively, they did not fall within the waiver of sovereign immunity contained in the ordinance. The trial court dismissed the plaintiffs ICRA claim because the plaintiff did not have a “property right” to which ICRA’s due process protections apply. (Record p. 172) The trial court dismissed the plaintiffs 28 U.S.C. § 1983 claim because the tribal action complained of was not the equivalent of state action.
Finally, the trial court dismissed the 42 U.S.C.1981 claim because that section does not apply to Indian tribes or their employees in employment matters. (Record p. 176)
On appeal to this court plaintiff claims the trial court erred:
• in dismissing Count 8 (wrongful discharge in violation of ICRA rights);
• in concluding that the MTN has “the inherent sovereign rights and powers of an independent, indigenous sovereign nation”;
• in concluding that the court did not have jurisdiction to adjudicate the intentional tort claims in Count 3 (false imprisonment), Count 5 (trespass to chattels) and Count 6 (conversion);
• in determining the plaintiff did not have a property right in continued employment;
• in determining that the actions of the defendants did not constitute state action for the purposes of Counts 10 and 11.
Sua sponte, this court raised issues regarding the jurisdiction of the gaming disputes trial court to hear intentional tort claims between employees and whether the MTGA had failed to respond to a request for a hearing within the grievance procedure set out in its employee handbook. We reverse the trial court in part and affirm it in part.
II. STANDARD OF REVIEW
In reviewing a motion to dismiss, the trial court must consider the facts as alleged in the plaintiffs complaint in a light most favorable to the plaintiff. See Duguay v. Hopkins, 191 Conn. 222, 227, 464 A.2d 45 (1983). On appeal from a trial court’s decision granting a motion to dismiss, the appellate court conducts a plenary review, cf. Morton Buildings, Inc. v. Bannon, 222 Conn. 49, 53, 607 A.2d 424 (1992); M.T.O. 95-4 Article III, Section 301(c).
In addition to the allegations of the complaint, this court may consider the Assembly of Record filed by the defendants pursuant to Sections IV and V of M.TO 98-2 and the Discriminatory Employment Practices Act (DEPA) as providing additional “facts not apparent on the record.” See Connecticut Practice Book Sec. 10-31.
The facts which this court considers may be summarized as follows. In September of 1996 the plaintiff, an African American, was hired as a slots attendant by the MTGA. His initial wage rate was $8.01 per hour. (Record p. 60) He subsequently received a raise to $8.41 per hour on October 6, 1997. (Record p. 81) On September 13, 1996, plaintiff was granted a temporary gaming license (Record p. 67); on April 25, 1997 he received a permanent gaming license from the Division of Special Revenue of the State of Connecticut (Record p. 74); and on October 21, 1997 his gaming license was renewed (Record p. 84). When hired, the plaintiff signed an acknowledgment of receiving a copy of the Mohegan Sun Employee Handbook which stated in part that *377 he “agrees that my employment is terminable at will.” (Record p. 66)
Sometime in May or June of 1998 the plaintiff was transferred from his position as a slots attendant to a lower paying position in the EVS department. (Record p. 46) Plaintiff alleges that he made timely requests on numerous occasions for a hearing relative to his transfer or termination. He claims that the reason for the transfer/termination was discriminatory and that he requested a hearing under the employee grievance policy.
While the parties disagree whether the transfer/termination event occurred in June 1998 (see Complaint para. 23) or May 1998 (Complaint para. 70 and Personnel Action Form, Record p. 97), it is agreed that on June 11, 1998 plaintiff filed an employee incident report with the human resources department. (Record pp. 104-105) In that report plaintiff wrote “I, Darius Bethel, am requesting that I be given another chance in slots.” In response to plaintiffs incident report, on June 23, 1998 he met with a representative of the human resources department. After that meeting, on June 30, 1998, K. Blake of that department informed plaintiff orally that “discipline will also remain.” (Employee Relations Notes dated June 30, 1998)
At times relevant to the complaint, James K. Keane, a Caucasian, was employed by the MTGA as plaintiffs supervisor. Raul Ruiz (an unserved individual defendant) was employed by the MTGA as a floor manager. Raul Ruiz’s position was subordinate to James K. Keane.
A.ALLEGATIONS AS TO KEANE
In addition to the facts developed from the Assembly of Record, the plaintiff made specific factual allegations in his complaint against several defendants.
The plaintiff alleges that the defendant Keane performed the following tortious acts:
(1) undertook verbal attacks against the plaintiff and belittled him in front of other employees;
(2) made false and untrue statements about plaintiffs work, his work product and his appearance;
(3) encouraged others to belittle, mock, scorn and harass plaintiff;
(4) solicited others to make false reports regarding plaintiff;
(5) on at least one occasion (March 17, 1998) with the assistance of Raul Ruiz, forced and coerced plaintiff to purchase shaving foam and safety razors, go into a lavatory, and then assaulted and battered plaintiff by forcibly shaving his face;
(6) subjected plaintiff to racial epithets telling plaintiff he looked “like a baboon.”
B. ALLEGATIONS AS TO RUIZ
The plaintiff alleges that the defendant Raul Ruiz performed the following tortious act:
(1) On March 17, 1998 he grabbed plaintiffs head and physically shaved him which resulted in numerous lacerations, abrasions and cuts on plaintiffs body. Plaintiff did not voluntarily submit to the shaving.
C. ALLEGATIONS AS TO THE DEFENDANTS MTGA, MTGE AND MTN
The plaintiff claims that the defendants MTGA, MTGE and MTN performed the following tortious acts:
(1) improperly supervised and trained Keane and Ruiz;
(2) failed to protect plaintiff from Keane;
*378 (3) denied him due process per ICRA and its own policies by not providing him with a hearing, providing him only oral notice of personnel actions affecting him, failing to provided written decision re meeting with Kathy Blake, an employee relations counselor, (Record p. 114) or adequate notice of his rights to further hearings or appeals per the Employee Handbook, DEPA or ICRA; and
(4) removed plaintiff from his job as a slots attendant to a position of janitor, a lower paying job.
III. PRINCIPLES OF LAW
A. TRIAL COURT PROPERLY DISMISSED THE TORT CLAIMS
In his complaint the plaintiff included various counts alleging intentional torts against his former supervisor James Keane and a co-employee Raul Ruiz. Count 1 alleges assault stemming from an incident in which the plaintiff claims he was forcibly shaved by Ruiz while acting pursuant to the direction of the supervisor Keane. Count 2 alleges battery from this incident. Count 3 alleges false imprisonment. Count 4 alleges intentional infliction of emotional distress. Counts 5 and 6 allege trespass to chattel and conversion, respectively, for the use of the shaving equipment the plaintiff claims he purchased at the direction of his supervisor. Count 7 alleges negligent supervision. Count 10 alleges defamation. Count 12 alleges abuse of process.
B. JURISDICTION UNDER THE MOHEGAN ORDINANCES
The jurisdiction of the gaming disputes court is governed by the enabling act, M.T.O. 95-1 of the Mohegan Tribe of Indians of Connecticut. Sec. 102 states that the gaming disputes court is a court of limited jurisdiction. “Its subject matter jurisdiction is strictly limited as set forth in this Ordinance.” Article IV, Sec. 400(2)(d) provides that the gaming disputes court has personal jurisdiction over “any person who engages in negligent or tortious conduct within the Mohegan Reservation either in person or by agent or representative.” This grant of personal jurisdiction is limited by the express limitation of subject matter jurisdiction found in Article V, Sec. 502, of M.T.O. 95-1 which states:
“Nothing contained in the preceding paragraph or elsewhere in this Ordinance shall be construed as a waiver of the sovereign immunity of the Tribe, the Authority of the Tribe’s other enterprises or political sub-divisions, or of its officers, agents or employees, unless specifically denominated as such.” M.T.O. 95-1, Article V, Sec. 502 (emphasis added).
The trial court did not specifically address the issue of the liability of the individual defendants as opposed to the tribe. However, it is appropriate to apply the same analysis in upholding the dismissal of the claims against the individuals. M.T.O. 98-2 provides for a limited waiver of sovereign immunity for an employee to allege a discriminatory employment practice. In so doing the ordinance specifically states in pertinent part as follows:
The Mohegan Tribal Gaming Authority does not waive its sovereign immunity from claims, appeals, suits, complaints, or charges by any person based on any theory of liability for damages resulting from breach of express or implied contract or quasi-contract or from negligent or intentional tortious conduct, arising in, from or out of the person’s employment or the application for or termination of employment. The named defendant in any claim or appeal filed under this ordinance shall be the *379 Mohegan Tribal Gaming Authority, and no other person or entity.
M.T.O. 98-2, II(a)(c) states:
Except as specifically expressed in this ordinance, nothing in this ordinance shall be construed to be a waiver of the sovereign immunity of the Gaming Authority or of the Mohegan Trábe, its officer's, employees, agents, or political sub-divisions or to constitute a consent to any suit beyond the limits now or hereinafter specifically stated by law.
The waiver of sovereign immunity must be strictly construed. M.T.O. 98-2,11(d).
The clear import of these ordinances is that the court cannot impose liability upon supervisory employees acting within the scope of employment since the tribe has not waived its sovereign immunity from employment related claims. The trial court correctly relied upon the case of Pirolli v. Mohegan Tribal Gaming Authority, 1 G.D.R. 25 (Nov. 20, 1998) (Wilson, J.), in dismissing the claims against the individual defendants. In Pirolli the court construed the waiver provisions in M.T.O. 98-1 and M.T.O. 98-2. To give effect to both provisions the court found that the specific terms of M.T.O. 98-2 prevailed over1 the general definition of “injury” thereby effectuating the least change in sovereign immunity. Pirolli at 28.
As noted in the Pirolli case, it is a well settled principle of construction that specific terms covering the subject matter will prevail over general language of the same or another- statute which might otherwise prove controlling. Id. at 28 (citing Oles v. Furlong, 134 Conn. 334, 342, 57 A.2d 405 (1948); Institute of Living v. Hartford, 133 Conn. 258, 270, 50 A.2d 822 (1946)).
Statutes in derogation of sovereign immunity must be strictly construed. In order for- the sovereign to be sued without its consent, there must be a dear-intention by the legislative body through the use of express terms. Id. at 28 (citing White v. Burns, 213 Conn. 307, 312-313, 567 A.2d 1195 (1990)). Since the allegations of tortious conduct clearly arise out of the employment relationship, Counts 1 through 6, inclusive, and Count 10 must be dismissed; there has been no waiver of sovereign immunity for the employees of the tribe. This court is holding that sovereign immunity does not implicate the issue of jurisdiction for the claim. Instead, the court finds only that the lack of waiver of sovereign immunity constitutes a defense against the intentional tort claims made against the employees in this particular case. See Delores Schock v. Mashantucket Pequot Gaming Enterprise, MPTC-CV-98-127, 3 Mash. 258, 3 Mash.Rep. 129 (Sept. 20, 1999, Shibles, C.J.).
By way of analogy, in the case of Healy v. Mashantucket Pequot Gaming Enterprise, 2 Mash.App. 28, 1 MPR 63 (1999), the Mashantucket Pequot Court of Appeals considered the interplay between subject matter jurisdiction and tribal sovereign immunity. The Healy court found that “the issue of jurisdiction is separate and distinct from the issue of sovereign immunity.” Id. at 66. Tribal sovereign immunity may be waived, but a lack of subject matter jurisdiction may not be waived. Schock v. Mashantucket Pequot Gaming Enterprise, MPTC-CV-98-127, Sept. 20, 1999, (Schibles, C.J.) (citing In Re: Prairie Island, Dakota Sioux, 21 F.3d 302, 304 (8th Cir.1994)).
Sovereign immunity acts as a defense to an action, Weeks Const. Inc. v. Oglala Sioux Housing Authority, 797 F.2d 668, 671-2 (8th Cir.1986), whereas “subject matter jurisdiction is a primary and an absolute stricture on the court.” Prairie Island Sioux, 21 F.3d at 305 (citing Leroy *380 v. Great Western United Corp., 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)). See also National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 852, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) (requiring exhaustion of tribal remedies before United States Federal Court review).
C. EXCEEDING THE SCOPE OF EMPLOYMENT
The complaint filed by the plaintiff clearly alleges that the individual defendants were acting within the scope of their employment by the tribe. (Complaint para. 5 and 6). Under M.T.O. 98-1, Sec. 6, an individual employee is not immunized from liability for the full measure of the recovery applicable to a claimant “if it is established that their conduct exceeded the scope of their employment or authority.” M.T.O. 98-1, Sec. 6 (emphasis added).
It is clear from this ordinance that in a properly plead case where an employee’s conduct exceeded the scope of his or her employment, and which arises on the gaming site, the action could, and indeed must, be brought in the gaming disputes court against the individual employee. “Claims for individual liability arising out of conduct which is found to exceed the scope of employment and which arise on the gaming enterprise site shall be heard only in the gaming disputes court.” M.T.O. 98-1, Sec. 6.
In this particular case the court finds that the allegations plead conduct within the scope of employment and therefore must be dismissed as against the individual defendants due to the lack of waiver of sovereign immunity. Accordingly, that portion of the trial court’s decision which dismissed the claims against the individual defendants is upheld.
D. DISCRIMINATORY EMPLOYMENT PRACTICES CLAIM
The gravamen of the plaintiffs claim with respect to the Discriminatory Employment Practices Ordinance 98-2 is that he was discriminated against because of his race (African-American) and was demoted from a job as a slots attendant to a lower paying position in EVS.
M.T.O. 98-2 provides in relevant part:
i) “Discriminatory Employment Practice” means: a refusal by the Gaming Enterprise to hire or employ any individual, or a decision to bar, suspend or discharge from employment any individual because of such individual’s race, color, religious creed, age, sex, physical handicap, national origin or ancestry, or because the individual, after becoming employed by the Gaming Enterprise, filed a claim for workers’ compensation benefits or otherwise exercised such rights afforded to him pursuant to the provisions of the Connecticut Workers’ Compensation Act. C.G.S. Sec. 31-275, et. Seq.; provided that, it shall not be a discriminatory employment practice when the practice: (a) constitutes a legitimate implementation by the Gaming Enterprise of a bona, fide occupational qualification or need; (b) was the result of a legitimate, nondiscriminatory business decision; (c) implements the provisions of the Management Agreement requiring preference in recruiting, training and employment to members of the Mohegan Nation, their spouses and children and to enrolled members of other federally recognized Indian Tribes; or (d) would have occurred notwithstanding any discriminatory employment practice.
Construing the allegations Count 7 of the complaint most favorably to the plaintiff, as we must, the complaint states a cause of action under the ordinance. Nonetheless, the trial court properly dismissed the *381 count on the grounds that it was not timely filed per M.T.O. 98-2, Sec. 111(b)(1).

COUNT 8

Reading Count 8 most favorably to the plaintiff, the court holds that the allegations suffice to state a cause of action under the Discriminatory Employment Practices Ordinance. The date of the termination/transfer triggers time for hearings under the employee grievance policy. The employee incident report filed by plaintiff on June 11, 1999 describes a number of situations that occurred during the term of employment that he was unhappy with and in the end stated: “I, Darius Bethel, am requesting that I be given another chance in slots.” The court deems this a request for a hearing under step four of the grievance process. The affidavit of Kevin C. Bogle, Vice President, Human Resources for the MTGA, establishes the business practices of the Sun and a summary of what their employment records relating to Bethel mean. Kathy Blake, an employee relations counselor, met with the plaintiff and his father on June 23, 1998. On June 30, 1998 Ms. Blake orally informed the plaintiff of her1 decision regarding his June 11, 1998 complaints, but made no reference to his right to a Board of Review hearing on his complaints. In essence, the plaintiff asserts he was terminated from his position in slots and demoted. He alleges, at least in part, that this was based on his race. (Complaint para. 30, 33, 63 and 77) He further alleges, inter alia, that this conduct was in violation of his rights to equal protection of the laws and to due process of law in violation of the ICRA, 25 U.S.C. §§ 1302 et seq.
For the purposes of this decision it is not necessary to determine whether the plaintiff had a property interest in his position. He had a right to “some kind of a hearing” under the ICRA by virtue of the defendant’s own Employee Handbook.[1] The plaintiff filed a written “Employee Incident Report” dated June 11, 1998. (Record p. 104) He requested that “I be given another chance in slots.” In response, the employee relations department “advised him that he would not be transferred back to the Slots Technician Position.” (Record p. 114) This was not put in wilting and delivered to the plaintiff. Steps 4 and 5 of the Employee Handbook provide as follows:
Step 4: In the case of a disciplinary final written notice or termination where the eligible employee remains unsatisfied following notification and explanation by Employee Relations, the employee shall have the right to have the disciplinary final written warning or termination considered by a Board of Review Panel; provided he/she makes a request to Employee Relations within forty-eight (48) hours of receiving notification and explanation.
Step 5: Should either1 party not agree with the decision, they may appeal, within five (5) days of its announcement to the General Manager, or in the General Manager’s absence, the Senior Vice President of Human Resources. The decision rendered is final. (Record p. 116)
Because there was no “final written notice” or “final written warming”, the time period for requesting consideration by a board of review panel has not begun to run. The plaintiff is entitled under the due process clause of the ICRA, and the *382 Employee Handbook, to a hearing by a board of review panel. Therefore, the court concludes that this matter must be reversed as to Count 8 only and remanded to the trial court with directions that the plaintiffs request to be reinstated to the slot technician position be considered by the board of review panel. If either party should not agree with the board of review decision, an appeal may be taken to the general manager whose decision under Step 5 is final. An appeal from such final decision may be taken under M.T.O. 98-2.[2]

COUNTS 9 AND 11

In Count 9 plaintiff claims that the defendants violated his rights that are protected by 42 U.S.C. § 1983. He alleges that the MTGA and the MTGE were acting “under color of law ... as the employer, sovereign legislative body, and executive enforcement division for the Mohegan Ti'ibal Nation.” He further alleges that the defendant Keane was “enforcing rules and regulation laws of the Mohegan Tribal Council.” 42 U.S.C. § 1983 provides in pertinent part that:
Every person who under color of statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.... (emphasis added)
An essential allegation to sustain this claim is that the defendants must be acting “under color of a statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia.” In his brief, plaintiff argues that the Mohegan Tribe’s compact with the State of Connecticut and the state’s role in the regulation of gaming create a basis for claiming that the defendants’ actions in this case occur under the color of state law. There are, however, no allegations in the complaint to support in any way the arguments made in the brief.
Generally, courts have held that an action by an Indian tribe is not the equivalent of the state action required to sustain an action under a 42 U.S.C. § 1983 action. In R.J. Williams Company v. Fort Belknap Housing Authority, 719 F.2d 979 (9th Cir.1983), a dispute arose between a building contractor and a housing authority created by the Fort Belknap Indian Community. The housing authority brought suit in tribal court and received an attachment against the contractor. The contractor brought suit in federal court claiming inter alia, that the actions of the housing authority violated its rights protected by 42 U.S.C. § 1983. It argued that since the tribe had incorporated portions of federal and state law into its ordinances, that this made the housing authority’s conduct under “color of state law.”
The court held
“. .. no action under 42 U.S.C.1983 can be maintained in federal court for persons alleging deprivation of constitutional lights under color of tribal law. In-dian tribes are separate and distinct sovereignties, (citations omitted) and *383 are not constrained by the fourteenth amendment.” R.J. Williams Company, supra at 982.
In Evans v. McKay, 869 F.2d 1341 (9th Cir.1989), the court held that a valid claim under 42 U.S.C. § 1983 had been plead against police officers carrying out orders of the tribal court of the Blackfeet Tribe of Indians. Since the police officers operated in a dual capacity—as officers for the Bureau of Indian Affairs and as officers of the police for the City of Browning, Montana—the court held that under the facts of the case action “under color of state law” had been well plead.
In the present appeal the complaint is devoid of any allegations that the MTGE, the MTGA, or the individual defendant Keane were acting under any authority other than that of the Mohegan tribe. The trial court properly dismissed Count 9 of plaintiffs complaint for failure to allege an essential element of a claim under 42 U.S.C. § 1983.
In Count 11 plaintiff claims that the defendants discriminated against him based upon his race, in violation of 42 U.S.C. § 1981. This statute states in relevant part:
All persons within the jurisdiction of the United States shall have the same right in any State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to use full and partial benefit of all laws and proceedings for the security of person and property as is engaged by white citizens.... 42 U.S.C. § 1981
The legislative origin of this section was the Civil Rights Act of 1866. That statute was enacted shortly after adoption of the Thirteenth Amendment of the United States Constitution. Its purpose was to protect the former slaves as they exercised their new freedoms. See L.K. Larsen, Employment Discrimination, 2d Ed., $ 101.06[1] (1999). The broad affirmation of rights contained in 42 U.S.C. § 1981 was significantly limited in its application to Indian tribes by more recent legislation involving discrimination in an employment context. Title VII of the Civil Rights Act of 1964, as amended, specifically excluded Indian tribes, such as the Mohegan tribe and the MTGE, MTGA, from the definition of an “employer” for the purpose of that Act. See 42 U.S.C. § 2000e(b)(l). Further, 42 U.S.C. § 2000e-2(i) specifically exempts from the protections of Title VII businesses on or near an Indian reservation and allows those employers to have employment preferences for Indians living on or near a reservation.
The application of 42 U.S.C. § 1981 to Indian tribes was previously considered in Wardle v. Ute Indian Tribe, 623 F.2d 670 (10th Cir.1980). The court held that the broad general protections offered by 42 U.S.C. § 1981 were controlled by the specific exemptions for Indian tribes created by the Civil Rights Act of 1964. Wardle, supra at 673. This court concurs with the trial coui't that the reasoning of the War-dle case is sound and that the trial court’s decision dismissing Count 11 was proper.

. See Board of Regents of State Colleges v. Roth, 408 U.S. 564. 569-570. 92 S.Ct. 2701. 2705, 33 L.Ed.2d 548 (1972).

. The court notes that M.T.O. 98-2 has internally inconsistent language as to where a non-probationary employee should file his/her appeal. See M.T.O. 98-2, Sec. 1(a) versus Sec. 111(c)(1). It would appear to this panel that the appropriate forunt for an appeal should lie first with the gaming dispute court rather than the appellate court; that is, a non-probationary employee who has access to the five step review process may appeal to the trial court from a final decision of the general manager.